UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-14011-CIV-MAYNARD

JOHNNIE TERESA MARCHISIO AND
ADRIAN MARCHISIO,

      Plaintiffs,

v.

CARRINGTON MORTGAGE SERVICES, LLC,

      Defendant.

_____/

## ORDER ON PLAINTIFFS' OMNIBUS MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES (DE 278) AND BILL OF COSTS (DE 283)

**THIS CAUSE** comes before this Court upon the above Motion. Having reviewed the above Omnibus Motion and Bill of Costs; the Response (DE 294) and Reply (DE 298) thereto; and the attached exhibits, this Court finds as follows:

## I.    BACKGROUND

Before discussing the merits of the Plaintiffs' attorney fee request, this Court reviews several aspects of the litigation. This Court reviews the underlying history that led up to the instant lawsuit. This Court reviews the substantive legal issues that were at issue in this case. Lastly this Court reviews the Eleventh Circuit's remand ruling and the post-appeal litigation of this case. This Court does so because aspects of the litigation history relate to the parties' arguments regarding the proper fee amount. It also provides helpful background and context for the fee analysis, generally.

### A.      The Preceding Lawsuits

This Court draws the litigation history from the underlying summary judgment ruling. That ruling is docketed at DE 171 and also reported at <u>Marchisio v. Carrington Mortgage Services, LLC</u>, 2016 WL 10568065 (S.D.Fla. 2016). The litigation history begins in August 2008 when the Plaintiffs defaulted on their home loan. In July 2009 the Defendant sued the Plaintiffs to foreclose their interests against the property. The parties reached an agreement to settle that case. Pursuant to that settlement agreement---which is the "First Settlement Agreement" of the overall litigation history---the Plaintiffs agreed to deed the property to the Defendant in lieu of foreclosure. In return the Defendant agreed to report the resulting loan discharge to the credit reporting agencies ("CRA's"). The Defendant failed to do so, however, and the Plaintiffs returned to the state foreclosure court for relief. That court entered an order in the Plaintiffs' favor.

That same occurrence---of the Defendant failing to comply with its obligations and of the Plaintiffs seeking judicial intervention and relief---would repeat itself several more times. That pattern resulted in two more lawsuits. It culminates with the instant litigation and ultimately the instant fee and cost motion.

The Defendant resumed debt collection efforts on the home loan (despite it being discharged) and continued to report inaccurate information to the CRA's. The Plaintiffs went to federal court to seek relief. That lawsuit, the "First District Court Case", ended with a settlement agreement. At ¶5 of this Court's Order at DE 92, this Court observed how that "Second Settlement Agreement" had resolved all legal disputes over all collection activities through the date of January 23, 2013. In its appellate ruling the Eleventh Circuit adds that the Plaintiffs

settled the First District Court Case for $125,000. See Marchisio v. Carrington Mortgage Services, 919 F.3d 1288, 1295 (11th Cir. 2019).

The Second Settlement Agreement required the Defendant to take certain corrective actions. The Defendant did not do them within the 90-day compliance period, however, even though the agreement expressly made time of the essence. The Plaintiffs complained. The Defendant finally did issue correct information to the CRA's, but it still left one data point (the existence of an outstanding balloon balance) inaccurate. In addition the Defendant inaccurately reported to the IRS a loss on the loan, which had the potential effect of increasing the Plaintiffs' tax liability. (¶5 of DE 92). The Defendant declined to withdraw the inaccurate 1099 IRS report.

Because of those ongoing problems, the Plaintiffs asked to reopen the First District Court Case. The presiding judge denied that request and declined to exercise jurisdiction over the Second Settlement Agreement. Instead the presiding judge gave the Plaintiffs leave to enforce it by way of a new lawsuit (which became the instant lawsuit). The Plaintiffs also went to the credit reporting agencies to seek help from them.

Additional problems happened. The Defendant answered inquiries from the CRA's with inaccurate information. Inaccurate information in the Defendant's database resulted in force-placed insurance notices to be sent to the Plaintiffs beginning in November 2013. Thirdly, during the fall of 2013, the Plaintiffs allege that they received debt collection calls for a debt that they did not actually owe to the Defendant.

### B. This Lawsuit

The Plaintiffs filed the instant lawsuit---the Second District Court Case---on January 8, 2014. The Plaintiffs brought this lawsuit to compel the Defendant's compliance with the Second Settlement Agreement; to obtain redress for the Defendant's breach of that contract; and to obtain

redress for the Defendant's violations of consumer protection laws. Upon the parties' consent U.S. Magistrate Judge Frank J. Lynch, Jr., became the presiding judge over this case on March 23, 2015 (DE 49). U.S. Magistrate Judge Lynch served as the presiding judge over this case through the time of the appeal.

In their instant fee motion the Plaintiffs stress the age of this case which spans back six years to January 2014. However the case was not litigated on a steady and ongoing basis over that full span of time. Although the case was filed in January 2014, substantive litigation activity did not begin in earnest until over a year later, in March 2015. Both sides were slow to develop their respective cases. Discovery did not begin in earnest until July 2015, having been postponed for the Defendant's convenience. Litigation activity then fell into another lull and did not resume again until October 2015. That second resumption of substantive litigation activity occurred soon after both sides had obtained additional counsel. (The Orders at DE 92 and DE 205 summarize this early part of this lawsuit's litigation history.) The Plaintiffs filed their Amended Complaint (DE 93) on November 13, 2015. Litigation remained active thereafter, through the date of summary judgment ruling in September 2016.

The Defendant vigorously resisted discovery. That resulted in four Orders (DE 73, 92, 96, and 101) compelling the Defendant to produce responsive information. Those Orders addressed the Defendant's failure to produce information about debt collection calls; to disclose information about its use of a third party vendor; and to produce a corporate representative knowledgeable about the issues. The Defendant's slow production of discovery affected the course of litigation in other ways. It necessitated extensions of pre-trial deadlines. It left the Defendant's broadly worded Affirmative Defenses undeveloped. It necessitated a late amendment to the Complaint. It also complicated the summary judgment stage of the case during

which the Defendant conceded no factual point. For example, the Defendant declined to describe the nature of its business, as the summary judgment ruling (DE 171) notes at ¶2.

The Amended Complaint (DE 93) filed on November 13, 2015 was the operative pleading subject of the summary judgment ruling. In that ruling, Judge Lynch found the Plaintiffs to prevail on just one of their three main causes of action. Next, in its Order at DE 196, Judge Lynch clarified why the Plaintiffs' two ancillary counts for injunctive relief were moot[1]. In his Order at DE 196 Judge Lynch then awarded the Plaintiffs $3,000 in statutory damages (representing the maximum statutory damages possible) for the count on which they prevailed. Judge Lynch awarded the Plaintiffs $112,860.12 in fees, costs, and expenses in two subsequent Orders. Those two Orders are docketed at DE 205 (reported as Marchisio v. Carrington Mortgage Services, LLC, 2017 WL 5478285 (S.D.Fla. 2017)) and at DE 224 (reported as Marchisio v. Carrington Mortgage Services, LLC, 2017 WL 5479875 (S.D.Fla. 2017)). The above rulings were reduced to an Amended Final Judgment (DE 225).

The Plaintiffs appealed. Thereafter the Defendant cross-appealed. The Plaintiffs prevailed. The Eleventh Circuit affirmed that the Plaintiffs prevail on Count I and are entitled to full statutory damages. However the Eleventh Circuit remanded the case for the jury to decide whether the Plaintiffs may recover actual damages under that count as well as for the jury to decide whether the Defendant is liable under the other two counts. During the time of the appeal, the undersigned U.S. Magistrate Judge Shaniek M. Maynard replaced U.S. Magistrate Judge

---

[1] In its remand ruling the Eleventh Circuit did not address the Plaintiffs' two counts for injunctive relief nor Judge Lynch's ruling thereon. Presumably that part of the summary judgment ruling in the Defendant's favor is unaffected by the remand opinion and remains standing as is.

Frank J. Lynch, Jr., upon his retirement. Consequently the undersigned U.S. Magistrate Judge

Shaniek M. Maynard has been the presiding judge over this case after the remand.

## C.     The Substantive Legal Issues

In addition to the litigation history, this Court summarizes the substance of the summary

judgment ruling and the Eleventh Circuit's opinion. This Court does so because it relates to one

of the Plaintiffs' primary arguments in support of their fee motion. The Plaintiffs---and their

expert witness at ¶¶ 31 and 65 of his Declaration (DE 278—3)---describe a substantial degree of

success on appeal, a degree of success great enough to support the amount of their claimed fee

and their requested multiplier enhancement. A second reason for revisiting the summary

judgment ruling and the Eleventh Circuit's opinion is because it provides additional background

for the underlying claims for relief and thus additional context for the fee analysis.

### 1. The Fair Credit Reporting Act

Count I is where the Plaintiffs alleged that the Defendant had violated the Fair Credit

Reporting Act, 15 U.S.C. § 1681 ("FCRA"). FCRA requires a furnisher of credit information

(which the Defendant was found to be) to provide accurate information. The Plaintiffs prevailed

on Count I at both summary judgment and on appeal. The Eleventh Circuit affirmed that the

Defendant had not conducted a reasonable investigation and that the Defendant's violation was

willful in the legal sense of a reckless disregard of the statute's requirements. The Eleventh

Circuit also affirmed the award of maximum statutory damages. At page 8 of their Reply (DE

298) the Plaintiffs stress how their appeal yielded an opinion "that sets the standard for

reasonableness for reviewing and handling credit reporting disputes and fixing credit reporting

errors." However that was in the form of an affirmance for which no appeal was necessary.

The opinion did not go so far as to resolve a conflict in the law or to create new law, however. The one exception may concern the legal question of whether a FCRA-plaintiff may recover for emotional damages. The summary judgment ruling observed inconsistency in the case law over what a plaintiff must prove to recover emotional damages for a FCRA violation. See also, Zachloul v. Fair Debt Collections & Outsourcing, 2010 WL 1730789, *6 (M.D.Fla. 2010) (citing decisions that declined to award actual damages for violations of the Fair Debt Collection Practices Act). It nevertheless was a moot point, the summary judgment ruling concluded, because even if emotional damages were recoverable, the Plaintiffs still did not establish a causal link between them and the FCRA violation. The Eleventh Circuit's opinion confirmed the need for a plaintiff to establish a causal link, and it also indirectly confirmed a plaintiff's ability to recover emotional damages for a FCRA violation. Lastly the Eleventh Circuit confirmed a FCRA-plaintiff's ability to recover punitive damages even if the defendant had acted with just a reckless degree of culpability.

The focus of the appellate ruling instead was the summary judgment standard. That is, on the question of whether the Plaintiffs had shown sufficient disputes of material fact to survive summary judgment on their FCRA claim. The summary judgment ruling relied on how the Plaintiffs' emotional distress predated the Defendant's FCRA violations. The Eleventh Circuit saw room for the Plaintiffs to show how the later FCRA violations could have revived and exacerbated their pre-existing emotional distress.

## 2. Florida's Consumer Collections Practices Act

Count II was where the Plaintiffs alleged violations of Florida's Consumer Collections Practices Act, § 559.72, Fla. Stat., ("FCCPA"). That act governs consumer debt collection activity. The Eleventh Circuit remanded this count for the jury to determine the credibility of the

Plaintiffs' allegation that they did receive debt collection calls during the fall of 2013. The Plaintiffs' testimony was the only evidence of such; the record contained no other evidence of those calls being made. In finding that the Plaintiffs had raised a sufficient dispute of material fact, the Eleventh Circuit relied on the case of U.S. v. Stein, 881 F.3d 853 (11th Cir. 2018), which was decided after the summary judgment ruling. In Stein the Eleventh Circuit held that a plaintiff may create a dispute of fact on the basis of his or her own affidavit even if the testimony is self-serving and lacks corroboration.

Second, the Eleventh Circuit remanded this count for the jury to determine whether the Defendant had maintained procedures reasonably adapted to avoid violating the statute. The answer to that question would determine whether the Defendant meets the third prong of the bona fide error defense. Thirdly, the Eleventh Circuit remanded this count for the jury to determine whether a vendor had acted as the Defendant's agent when it undertook actions related to this claim for relief. Because the Eleventh Circuit reopened the question of whether the Defendant qualifies for the bona fide error defense, the question of whether the Defendant had a principal/agent relationship with its vendor no longer was moot. The principal/agent relationship question would have to be answered, as well.

### 3. Breach of Contract

Count III was the Plaintiffs' breach of contract claim (with the Second Settlement Agreement being the contract at issue). Summary judgment was entered in the Defendant's favor because of the lack of economic damages. The Eleventh Circuit affirmed that the Plaintiffs may not base the breach of contract claim on emotional distress damages only. However the Plaintiffs also had pleaded the potential of economic damages, the Eleventh Circuit pointed out. The Plaintiffs' allegation of having to finance the purchase of two cars at an interest rate higher than

they otherwise would have been charged sufficed for that purpose, the Eleventh Circuit found. The damages element of the breach of contract claim was at issue, therefore.

By making the damages element of the breach of contract claim at issue, the material breach element became at issue, too. The Eleventh Circuit left the question of whether the Defendant <u>materially</u> had breached the Second Settlement Agreement for the jury to answer. The summary judgment ruling had assumed the existence of at least <u>technical</u> breaches. The jury now would have to answer the question of whether the Defendant's two-day delay in complying with the Second Settlement Agreement's 90-day deadline constituted a material breach. The jury also would have to answer the question of whether the Defendant materially breached the Second Settlement Agreement's non-disparagement clause (although the Eleventh Circuit doubted the Plaintiffs' ability to prevail on it).

### 4.        Damages

The Eleventh Circuit saw in the Plaintiffs' allegations sufficient minimum claims of damages to send the claims to trial for the jury to answer as the fact-finder. However the range of potential damages was minimal, as the Plaintiffs, themselves, now stress at page 20 of DE 278 to support their attorney fee and multiplier enhancement requests. Their damages from the breach of contract claim were limited to the higher car financing interest rate. They characterize their FCRA damages claim as "a technical claim for emotional distress", the amount of which "was extremely speculative". Moreover they had "little anticipated chance for punitive damages". This Court adds that the Plaintiffs had little corroborating evidence despite having been given ample time in discovery to develop those claims, as this Court noted in its Orders at DE 116 and at ¶94 of the summary judgment ruling (DE 171).

### D.     The Post-Appeal Phase

The Eleventh Circuit remanded the case for the jury to decide the Plaintiffs' three primary claims for relief. Soon after remand but before pre-trial preparations began, the parties pursued settlement negotiations. After a lengthy negotiation process conducted by U.S. Magistrate Judge Bruce E. Reinhart, the parties resolved all legal claims for relief. They reached that settlement agreement---the third one between them over the full course of the litigation history---on August 30, 2019. The parties proffer into the record at DE 278—2 what this Court calls the "Third Settlement Agreement". The Plaintiffs settled this lawsuit for $153,000, all of which was to be paid directly to the Plaintiffs without any off-set for attorney fees or litigation expenses. The amount of the Plaintiffs' attorney fees and litigation expenses was left for this Court to assess.

The parties mention appeal fees and costs in their Notice of Settlement and Joint Motion for Further Orders (DE 270). This includes the $2,942.25 from the Appellate Judgment dated March 25, 2019. In its Order at DE 272 this Court instructed the Plaintiffs to include any such appeal-level fees and costs in a "comprehensive Motion for Attorney Fees and Costs". The instant Omnibus Motion is the Plaintiffs' comprehensive request and includes within it all fees and costs that the Plaintiffs are claiming for the appeal.

### II.     FEE ENTITLEMENT

The Third Settlement Agreement grants the Plaintiffs prevailing party status on the litigation as a whole. Although the Defendant denies any wrongdoing, ¶7 of the Third Settlement Agreement deems for settlement purposes "that Plaintiffs are the prevailing parties in the Litigation, including on their FCRA, FCCPA, and Contract claims". Consequently there is no need to make a lodestar fee reduction to account for partial success.

The Third Settlement Agreement further grants the Plaintiffs the right to recover "reasonable attorneys' fees and costs under the FCRA, FCCPA and Contract", leaving the amount of that fee and cost award for judicial determination. That provision covers both trial- and appellate-level litigation work. The parties' agreement alone suffices to give the Plaintiffs the legal right to seek a reasonable fee and cost award from the Defendant. Nevertheless, for the sake of thoroughness, this Court notes that the relevant statutes give the Plaintiffs the same legal entitlement to shift their fees to the Defendant. At 15 U.S.C. § 1681n(a)(1)(B)(3), the FCRA statute permits "the costs of the action together with reasonable attorney's fees". So does the FCCPA at § 559.77, Fla. Stat. Paragraph 6 of the Second Settlement Agreement (found in the record at DE 93—3) permits the recovery of "reasonable attorneys fees, expenses, and costs" "in any action commenced to enforce" it because "of a material breach". That provision therefore permits fee-shifting for the breach of contract count.

### III.    THE REASONABLE "LODESTAR" ATTORNEY FEE

Having established the Plaintiffs' entitlement to recover their attorney fees, this Court considers next how much that fee award should be. As clarified at page 17 of their Reply (DE 298), the Plaintiffs claim a total of $1,210,421.50 in attorney fees for all trial- and appellate-level work done on this case through the date of that Reply[2]. The Defendant proposes lodestar fee amounts based on a wide variety of criteria, but only two of its proposals have some sort of basis with the lodestar fee standard. The Defendant proposes $231,347.80 (applying U.S. Magistrate

---

[2] At ¶70 of his report at DE 278—3, the Plaintiffs' expert witness calculates the claimed fee to be $1,133,390.50. At page 17 of their Reply (DE 298) the Plaintiffs add $77,031 to it for work done since October 20, 2019.

Judge Lynch's prior 80% reduction to the Plaintiffs' current fee request) or alternatively $304,500 (the opinion of its Expert Witness).

The Plaintiffs were free to litigate their lawsuit how they saw fit. Their litigation strategy ultimately proved fruitful, ending with a $153,000 settlement. That does not mean, however, that they may bill the Defendant carte blanche for their attorney fees. The submitted invoice is not the sole measure of the court-awarded attorney fee. See McGowan v. King, Inc., 661 F.2d 48, 50 (5th Cir. 1981). Nor may a court be generous with another's money when compelling payment of attorney fees. See FIU v. Fla. Nat'l University, Inc., 2019 WL 3412159, *2 (S.D.Fla. 2019). Statutory fee-shifting is not meant to give the prevailing party or its attorney a windfall. See Fox v. Vice, 563 U.S. 826, 837 (2011).

Instead the prevailing party only may recover an objectively reasonable attorney fee. See Kearney v. Auto-Owners Ins. Co., 713 F.Supp.2d 1369, 1373-74 (M.D.Fla. 2010). That reasonable fee, called the "lodestar" fee, is the product of the number of hours reasonably expended on the litigation and the reasonable hourly rate. See ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). The general purpose of fee-shifting "is to fairly compensate counsel for the value of their work." See in re: The Home Depot, Inc., 931 F.3d 1065, 1085 (11th Cir. 2019). The goal of using an objective standard is to make fee assessments simpler, more uniform, and more predictable. See id. at 1084.

In making their lodestar argument, the Plaintiffs rely heavily on the factors from Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), but as the Eleventh Circuit explains in the case of in re: The Home Depot, Inc., 931 F.3d 1065 (11th Cir. 2019), the Johnson factors[3]

---

[3] Those factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill level needed to perform the legal service properly, (4) the loss of other

are largely redundant to the analysis. That is because they are generally subsumed in the lodestar standard already. Therefore this Court discusses them only where specifically relevant to the lodestar analysis.

Case law requires the fee movant to show good billing judgment. The prevailing party's attorneys should submit to the losing party the same bill that the attorneys would expect their own client to pay. Good billing judgment entails excluding work hours that are excessive, redundant, or otherwise unnecessary. It also means billing in a cost-effective way such as by enlisting associate attorneys and paralegals to do as much work as possible at their cheaper hourly rates[4]. See generally, Perkins v. Mobile Hous. Bd., 847 F.2d 735, 738 (11th Cir. 1988). Where the fee movant does not practice good billing judgment, "courts are obliged to do it for them". See Barnes, 168 F.3d at 428. See also, Hithon v. Tyson Foods, Inc., 566 Fed.Appx. 827, 829 (11th Cir. 2014) (affirming an 80% reduction of a $2.9 million fee claim for a $364,000 recovery because of the fee-movant's failure to exercise good billing judgment).

The burden is on the fee movant to demonstrate the reasonableness of the requested fee. That burden is met by proffering to the court specific and detailed evidence. See Barnes, 168 F.3d at 427. In support of their fee claim the Plaintiffs proffer extensive billing invoices, declarations by the billing attorneys, and a report from their expert witness. More than a bulk

---

work due to the attorney's acceptance of the case, (5) the attorney's customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

[4] The great majority of work done in this case is billed by the two attorneys with the highest hourly rate. Moreover the only hours that the Plaintiffs' expert witness cut from the Plaintiffs' fee claim were the relatively few hours billed by the paralegal.

evidentiary proffer is required, however. A fee movant must present the evidence in such a way that shows clearly the reasonableness of the time spent on the various tasks and activities that went into litigating the case. <u>See id</u>. Although it is the Plaintiffs, as the fee movants, who carry the burden of persuasion to support their claim, this Court is its own expert on the matter. Ultimately this Court may rely on its own knowledge and experience in assessing what the reasonable lodestar fee is. <u>See</u> <u>Butler v. Crosby</u>, 2005 WL 3970740, *7—8 (M.D.Fla. 2005).

### A.    The Reasonable Hourly Rate

The first component of the lodestar fee is the reasonable hourly rate. Case law defines the reasonably hourly rate as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation". <u>See</u> <u>Barnes</u>, 168 F.3d at 436. The relevant legal community is the area where the case is pending, <u>see</u> <u>Kearney</u>, 713 F.Supp.2d at n.25, which for this case would be the Fort Pierce Division. Moreover the reasonable hourly rate is not the rate of the attorney with the most experience but rather the rate of an attorney with a reasonable degree of experience. <u>See</u> <u>FIU</u>, 2019 WL 3412159 at *2. Where the attorney was retained on a contingency fee basis, the hourly rate is a derived from the reasonable value of services that the attorney provided (so long as it does not result in a windfall to the attorney). <u>See</u> <u>FIU</u>, 2019 WL 3412159 at *4. An above-market hourly rate implies expertise and proficiency. Expertise and proficiency in turn imply efficiency. <u>See</u> <u>James v. Wash Depot Holdings, Inc.</u>, 489 F.Supp.2d 1341, 1350 (S.D.Fla. 2007) and <u>Perez v. Sanford-Orlando Kennel Club, Inc.</u>, 2007 WL 842771, *5 (M.D.Fla. 2007). Ultimately, however, this Court is its own expert on the question of what the reasonably hourly rate is for the local legal marketplace and for this kind of litigation. <u>See</u> <u>Loranger v. Stierheim</u>, 10 F.3d 776, n.8 (11th Cir. 1994).

Five attorneys from two different law firms represented the Plaintiffs at the trial level. The Plaintiffs first retained the law firm of Shapiro & Kim, LLP, in December 2013. Paul Kim, Esq., and Scott Shapiro, Esq., are the law firm's partners and represented the Plaintiffs. In October 2015 the Plaintiffs retained the law firm of Kim Vaughan Lerner, LLP. That law firm's partner, Jay Kim, Esq., and its two associate attorneys, Kristen Palacio-Martinez, Esq., and Majd Asaad, Esq., represented the Plaintiffs as co-counsel. The Plaintiffs claim the hourly rates of: $500 (for Jay Kim, Esq.); $395 (for Paul Kim, Esq., and Scott Shapiro, Esq.); and $325 (for Kristen Palacio-Martinez, Esq., and Majd Asaad, Esq.). An additional attorney, Donna Greenspan Solomon, Esq., represented the Plaintiffs on appeal. Ms. Solomon charges an hourly rate of $450.00 for the appellate work that she rendered. Although this lawsuit began in January 2014, these are the <u>current</u> hourly rates for the above attorneys and paralegal. The Plaintiffs seek to apply their current hourly rates retroactively for the work done on this case since its beginning.

The Plaintiffs go to great lengths to support the claimed hourly rates. While this Court generally accepts their arguments, this Court also notes countervailing factors. The Plaintiffs claim that their hourly rates are consistent with the South Florida legal marketplace, but the Plaintiffs do not limit their argument to the legal marketplace for the Fort Pierce Division of the Southern District of Florida. Instead they draw rates from the Miami, Fort Lauderdale, and West Palm Beach metropolitan areas. Counsel agreed to represent the Plaintiffs on a contingency fee basis to litigate causes of action that generally have low damages. That means, as the Defendant points out, counsel entered this case with the expectation for a fee that was much lower than the bill they present now.

In their Declaration (DE 284) the Plaintiffs recall their efforts to find an attorney to represent them for purposes of this litigation. The attorney who represented them for the First District Court Case declined to represent them in the second. The Plaintiffs contacted two law firms in the local area and two law firms in Boca Raton. All four of those law firms declined to represent them, but it was through that process that the Plaintiffs came into contact with the law firm of Shapiro & Kim, LLP. Initially the law firm declined to represent them, too, advising them instead to ask the credit reporting agencies for help. It was only after that attempt to go through the CRA's had failed did the law firm of Shapiro & Kim, LLP, agree to represent them. Thus the Plaintiffs did encounter difficulty in finding new counsel, but that difficulty does not necessarily show how this case justifies such high hourly rates. The Plaintiffs do not explain how the failure of the attempt at self-help with the CRA's made the case <u>more</u> attractive for Shapiro & Kim, LLP, to accept.

The Plaintiffs assert that this case required a high level of skill and experience which in turn justifies the high hourly rates. This Court does not doubt the expertise and experience of the counsel who represented the Plaintiffs. Nor does this Court doubt the effort that this litigation required of them. However there are countervailing factors, too. This litigation did not involve legal issues that were unusually complex. In many respects the legal issues were straightforward, and indeed the preceding litigation history gave the Plaintiffs a very favorable base from which to litigate. It is true that this case ended with a substantial settlement recovery (despite the potential for just minimal damages), but this Court recalls that the First District Court Case ended with a substantial recovery, too. Certainly the skill of the Plaintiffs' trial attorneys was instrumental in negotiating such a favorable settlement, but the Plaintiffs went into the settlement negotiations with a strong hand. It was unlikely that the Defendant would prevail on all counts,

but going to trial only would increase litigation costs---and demonstrably so---for both it and the Plaintiffs. Because the parties were able to resolve the case before trial, both sides spared themselves the expense of trial, as well.

The Plaintiffs raise similar arguments in support of the hourly rate that they seek to bill for their appellate attorney, Ms. Solomon. This Court accepts that Ms. Solomon is a highly qualified appellate attorney whose expertise contributed to the Plaintiffs' success on appeal. Their expert witness goes to great lengths to praise her oral argument and proffers the transcript to show it. This Court does not doubt her expertise and experience. For the sake of thoroughness, however, this Court notes that the Plaintiffs and their expert witness overstate the point somewhat. At oral argument Ms. Solomon mostly summarized the Plaintiffs' position. The focus of oral argument instead was on the Defendant's attorney. This Court adds that Ms. Solomon had the benefit of a comprehensive summary judgment and associated rulings on which to base her appeal. At least one dispositive issue on appeal was relatively straight-forward. The was the issue of whether the Plaintiffs had proffered sufficient evidence to survive summary judgment on her claims for relief. Moreover the Plaintiffs had the benefit of a favorable, subsequently rendered Eleventh Circuit opinion that strengthened their position on that issue.

Lastly this Court considers the hourly rate charged by counsel for the Defendant. For litigation activity through September 2016, the Defendant claimed in its fee motion at DE 174 an hourly rate of $225. The Defendant based that hourly rate on the experience of its attorneys "in handling complex litigation matters, collectively including thousands of claims under consumer law statutes." In other words, the Defendant claimed a much lower hourly rate for attorneys with experience and expertise equivalent to the Plaintiffs' attorneys.

In short the hourly rates claimed for the Plaintiffs' attorneys are high even after accounting for their experience and the favorable result obtained. Nevertheless this Court accepts the claimed hourly rates as is. Instead this Court will focus on the claimed work hours to ensure that they reflect the efficiency that those high hourly rates imply. Given that there are multiple attorneys with different hourly rates, the claimed work hours also provides the easier way to assess and adjust the lodestar fee.

### B.   The Reasonable Number of Hours

The lodestar standard requires that the number of work hours likewise must be objectively reasonable. The Plaintiffs claim a total of 2,744.95 of attorney work hours[5] spent on this case. To view the claim from a different perspective: if only one attorney worked on the Plaintiffs' case exclusively and without interruption for that many hours, then that hypothetical attorney would have spent one and one-third years working on it. (The total attorney fee that the Plaintiffs are claiming would equate to a yearly salary of $907,816.00 for that hypothetical attorney.) There are several points for (and against) the reasonableness of the claimed work hours. This Court addresses them in turn below.

### 1.   The Nature and Degree of the Plaintiffs' Success

This Court begins with the nature and degree of the Plaintiffs' success. The amount of the recovery from a consumer protection lawsuit is a poor guide for the amount of the attorney fee, the Plaintiffs argue. The amount of the attorney fee will be disproportionately large in comparison to the recovery. This is because a consumer protection lawsuit usually involves

---

[5] At page 14 of their Reply (DE 298), the Plaintiffs claim a total of 2,579.25 hours as opined by their expert witness. At page 17 of their Reply they add to it 165.70 hours incurred since October 20, 2019 litigating attorney fees, costs, and expenses.

minimal actual damages and modest liquidated damages. For that reason consumer protection statutes permit fee-shifting to encourage "private attorney generals" to enforce them. See Fox, 563 U.S. at 833 (explaining how a plaintiff acts to vindicate policies that Congress makes high priority). This Court adds that accurate credit information is of critical importance in contemporary life (as the Defendant, a lender, should appreciate). That factor is amplified by the fact that the Plaintiffs' appeal added to Eleventh Circuit case law in this very important area. The nature of this lawsuit therefore runs in the Plaintiffs' favor.

The Plaintiffs stress how the settlement recovery exceeds by far the amount of damages usually recovered in a consumer protection case. Not only does that fact weigh in their favor, but so does the fact that the Plaintiffs obtained that unusual degree of success despite the Defendant's vigorous defense. As the Plaintiffs characterize it, the Defendant is a sophisticated litigant in the consumer law arena, who pursued a strategy of minimizing its wrongdoing, and presumably who sought to outspend or outlast them. The Defendant now must bear the responsibility for that defensive strategy, the Plaintiffs maintain. Had the Defendant instead proactively managed this case with a goal of early resolution, it would have reduced not only its own attorney fee bill, but theirs, too, the Plaintiffs contend.

The Plaintiffs argue that the combination of vindicating their statutory and contractual rights plus the degree of their success despite many years of difficult litigation bolster the reasonableness of their claimed attorney fee. To a large extent the Plaintiffs are correct. The Plaintiffs did put much effort into litigating this case to an ultimately successful conclusion, and the below lodestar fee compensates them for it. That does not give the Plaintiffs entitlement to an unreasonably large or inflated fee, however. As this Court observes above, this litigation did not involve legal questions of particular novelty or difficulty that alone would justify the total work

hours that the Plaintiffs claim. Nor is counsel's expertise consistent with the need to work the number of hours claimed.

### 2.       Task-by-Task Review

The arguments that the Plaintiffs (and their expert witness) proffer in support of their claimed fee concern the broad, general aspects of the litigation: the litigation's time span, the Defendant's vigorous defense, their success on appeal, and their substantial recovery at settlement. They do not support their fee claim at the level of individual tasks, however. They do not quantify how much time was spent on discrete tasks, and they do not explain how that quantity of time was reasonably expended. The Plaintiffs do not support their fee claim at the task-by-task level, in other words. The same can be said of the arguments that the Defendant (and its expert witness) raise in opposition. The Defendant likewise relies on broad strokes. While the Defendant does address each billing entry, it raises an objection to nearly every one of them. The Defendant does not take the analysis one step further and quantify how many work hours should have been spent to bring any particular task to completion.

This brings the discussion around to the review of the claimed work hours at the task-by-task level. The nature of the billing makes a task-by-task review very difficult. For one, counsel uses "block billing" by which one unit of work time covers a variety of separate and often unrelated tasks. See FIU, 2019 WL 3412159 at *6 and St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co., 2019 WL 7905013, n.3 (S.D.Fla. 2019) (discussing what is meant by "block billing" and how it hinders a lodestar fee review). Secondly, the hours spent on a particular task (such as writing a particular motion) are spread across multiple billing entries. Thirdly, the time spent working on any given task is spread further still across the different billing invoices from the multiple attorneys. Altogether, that makes it difficult to count how much work time was spent on

any one task, made harder still by the sheer length of the billing invoices. Where the nature of the billing, itself, hinders the lodestar fee analysis, a reviewing court may use an across-the-board, percentage-based reduction to eliminate excessive hours and to fashion a more reasonable fee amount. See Pronman v. Styles, 2016 WL 3661940, *6 (S.D.Fla. 2016), Zachloul, 2010 WL 1730789 at *6., and Kearney, 713 F.Supp.2d at 1377, 1379. Indeed the Plaintiffs concede in their Reply the appropriateness of an across-the-board reduction of their claimed fee---albeit at the relatively lower percentage that FIU (7.5%) and St. Louis Condo (10%) used.

Despite the obstacles that the billing invoices present, this Court nonetheless attempts a task-specific review. The billing invoices are too lengthy to permit such an inquiry for every task. Instead this Court limits the inquiry to just a few particular tasks to use as test examples. For each particular task surveyed, this Court goes through all of the attorneys' billing invoices and totals the amount of time spent on it. There is the potential that the resulting total may be less than perfectly accurate. There is the risk of error of overcounting (or undercounting) what the total time spent on the particular task is. That stems from the nature of the Defendant's billing records as discussed above. That is complicated by the presence of vague billing entries (where the subject of the work is unclear). Where a billing entry is for a conferral between co-counsel about an unidentified subject matter, this Court assumes that the conferral concerns a contemporaneously undertaken task.

The purpose of the foregoing task-by-task sample review is to quantify how much counsel claims to have worked (and billed for) fully completed tasks. After quantifying the total bill for a particular task, this Court then may consider it against the nature of the work done. Knowing the total bill for a particular task lets this Court judge its reasonableness as measured objectively against what the task typically would entail and its benefit to the litigation effort. It

also enables this Court to discern any billing patterns. If the total bill for all of the tasks sampled seem uniformly excessive, then that observation permits the inference that the total bill for other, non-sampled tasks must be excessive to the same extent.

### a.    Pre-Appeal Litigation Activity

This Court surveys first the time period between the litigation's start and the appeal. The first task that this Court considers during this initial phase of the litigation is the drafting of the Initial Complaint and other tasks related to it. This Court counts 14.90 hours spent on that task between December 8, 2013 and January 8, 2014 (for a resulting fee of $5,215.00). For time spent drafting the Amended Complaint and on such related tasks as the Motion for Leave to Amend, its briefing, associated research, and conferrals, this Court counts 91.10 hours spent between October 12, 2015 and November 12, 2015 (for a fee of $35,410.00). For the time spent between February 17 and 19, 2016 on a motion to extend deadlines, this Court counts 5.10 hours (for a fee of $2,040.00). For the second mediation this Court counts 96.30 hours spent between February 24 and May 20, 2016 (for a fee of $36,416.50). That includes time spent scheduling the mediation which is a clerical task or on the activity of "attending to mediation" which is vaguely worded but the context seems to suggest more clerical-type work.

### b.    Appeal Activity

This Court turns to the second phase of the litigation---the appeal---for which the Plaintiffs' expert witness calculates 465.8 total hours worked. For the example task from this litigation phase, this Court considers the time spent preparing for the oral argument (as well as attending the oral argument, itself). Between August 24, 2018 and September 28, 2018, this Court counts 99.10 hours spent by three attorneys (for a resulting fee of $40,052.50).

The Defendant raises its own objections to time entries from the appeal. The Defendant complains about the three hours of attorney work time that was billed for filling out a very simple form, the Civil Appeal Statement and Certificate of Interested Persons. The Defendant complains about the 70 hours that Ms. Solomon, an appellate specialist, bills for researching and drafting the Initial Brief when the summary judgment ruling already laid out the facts and legal issues in detail. This Court adds its observation of how Ms. Solomon began working on this case very early, on September 18, 2016, and thus well before the Notice of Appeal was filed on February 3, 2017.

### c.      Post-Appeal Activity

The third phase of the litigation is the time after the Eleventh Circuit's remand. Between April 24, 2019 and May 13, 2019 this Court counts 20.60 hours spent on preparing the new Joint Scheduling Report and the related Motion to Reopen Discovery (for a fee of $8,049.50). The Defendant adds its objection to the 1.5 hours that the trial attorney, Jay Kim, Esq., spent conferring with the appellate attorney, Ms. Solomon, on April 29, 2019 even though the appeal was over. This phase includes settlement negotiation activity. This Court notes the Plaintiffs' complaint at page 3 of DE 298 about how the Defendant's initial failure to negotiate with full settlement authority protracted the proceeding.

This phase also includes the drafting and briefing of the instant fee and cost motions. Such work time is recoverable, see Sheet Metal Workers Int'l Ass'n v. Law Fabrication, LLC, 237 Fed.Appx. 543, 550 (11th Cir. 2007), although despite the extensiveness of that briefing effort, the Plaintiffs fall far short of justifying the total fee amount that they are claiming. For working on the Reply to the instant motion, the Plaintiffs claim an additional 165.7 hours worked

(including 62.2 hours by the appellate attorney, Ms. Solomon) for a resulting supplemental fee of $77.031.00.

### C.     The Lodestar Fee Calculation

The foregoing discussion shows how the fee amount that the Plaintiffs claim exceeds what is objectively reasonable. The nature of the case and the degree of the Plaintiffs' success does not run to such a degree to support the claimed total. Nor does the task-by-task review. For each task sampled and from every phase of the litigation, the total hours worked (and the resulting fee amount) exceeds what is reasonable and what the principle of good billing judgment permits. Consequently there is need for a percentage-wide reduction to reduce the claimed fee down to what is objectively reasonable.

A percentage-wide reduction also provides a practical way to account for those billing entries that are not compatible with the lodestar fee standard. The billing invoices contain entries that raise several additional concerns. There are concerns about time spent on administrative, clerical, or other tasks that do not require the skill of an attorney. Such work is not recoverable. See Kearney, 713 F.Supp.2d at 1378. There is a concern about travel time. The Plaintiffs argue that travel time is recoverable, but the two cases that they cite in support are distinguishable. The case of Rodilla v. TFC-RF, LLC, 2009 WL 88492 (S.D.Fla. 2009) awarded fees for counsel's time traveling to a mediation at which the other side failed to appear. The case of Kearney v. Auto-Owners Ins. Co., 713 F.Supp.2d 1369 (M.D.Fla. 2010) stated that travel time is permissible for an out-of-state attorney when no local counsel would represent the movant. Although the Plaintiffs' counsel do not have their offices in the Northern Division, they nonetheless are located within the Southern District of Florida. A third case provides a compromise solution: the case of St. Fleur v. City of Fort Lauderdale, 149 Fed.Appx. 849, 853 (11th Cir. 2005) suggests that

travel time may be recoverable, just not at the full hourly rate. Thirdly there is a concern about redundant work hours. Where multiple attorneys work on the case, each must be able to show a distinction contribution made toward accomplishing the same task. See Barnes, 268 F.3d at 432.

The percentage reduction must account for the excessive billing and reduce the fee total to what is consistent with the objectively reasonable fee amount. The reduction must not be so great, however, that it ignores the substantial work that went into litigating this case and to obtaining the substantial recovery for the Plaintiffs. In the end analysis, after weighing out the various competing factors, this Court finds that the total fee of $1,210,421.50 should be reduced by half. The resulting total of **$605,210.75** is the objectively reasonable lodestar fee. That amount better "approximates the fee that the prevailing attorney[s] would have received if [they] had billed the Plaintiffs directly]." See Perdue v. Kenny A., 559 U.S. 542, 551 (2010).

This Court also looks back to the prior lodestar fee determination in this case. For litigation activity through October 2016 (representing the pre-appeal phase of the litigation), the Plaintiffs originally had requested a fee payment of $545,470.50 (out of $600,000 claimed). Of that requested amount, then presiding U.S. Magistrate Judge Lynch awarded $94,000 as the lodestar fee. That was the equivalent to an 80% reduction. The 11th Circuit saw no error in that determination but re-opened the fee amount issue for reconsideration to account for how the case may develop after remand.

## IV.   ENHANCEMENT

The Plaintiffs claim a total of $1,210,421.50 in attorney fees for litigating this case. However that is not the actual fee that they request. The fee award that the Plaintiffs seek is larger than that and consists of the range of $2,420,843.00 to $3,026,053.75, as they clarify in their Reply (DE 298). The Plaintiffs ask this Court to apply either a multiplier or an enhancement

to increase their claimed fee to that range. The Plaintiffs seek a substantial increase, one that doubles or trebles the attorney fee.

The Plaintiffs set forth several arguments in support of a fee enhancement. The Plaintiffs seek an enhancement to reflect the risk of non-payment that their counsel assumed when they agreed to represent them on a purely contingency basis. The amount of damages potentially recoverable from this lawsuit was very limited, the Plaintiffs stress, which in turn limited the potential contingency-based fee. Their argument is not persuasive. Indeed the range of potential damages was so limited that it is difficult to see this case as a true contingency fee situation. Nor was the source of the attorneys' fee limited to a percentage of the damages recovered, this Court furthers. Each of the counts that the Plaintiffs asserted contained a fee-shifting provision. The enhancement therefore was unnecessary to encourage the attorneys to work on this case; the fee-shifting provisions already provided that incentive. The Plaintiffs deny being able to afford what turned out to be such an expensive and protracted litigation. This Court has no reason to doubt that especially if the current fee claim would have been their bill. At the time when this lawsuit was filed, however, the litigation's protracted course could not have been predicted. All of their previous lawsuits with the Defendant had ended favorably, with the previous lawsuit ending with a substantial recovery. Thus this Court does not agree that expense was such a strong factor when counsel agreed to represent them.

The Plaintiffs stress the degree of their success. Their substantial recovery is an important point and no doubt the result of their attorneys' expertise and effort. It is that same expertise and effort that the lodestar fee award already reflects. See Perdue, 559 U.S. at 553 (explaining how the lodestar fee analysis includes within it such as factors as the attorney's performance, the case's difficulty, and the results obtained). See also, St. Louis Condo., 2019 WL 7905013 at *8

(same). Although federal case law leaves open the possibility of an enhancement as a tool for rewarding superior performance, this Court does not find this case to present that kind of situation. That is not meant to detract from the excellent service that the attorneys provided for the Plaintiffs. Rather it is because the enhancement is reserved for the most extraordinary of circumstances. See Perdue, supra.

Federal case law reserves the enhancement used to compensate an attorney for a delayed fee recovery for only extraordinary circumstances, as well. It is limited to the situation where the attorney made an extraordinary outlay of expenses and the litigation was exceptionally protracted. See Gray v. Bostic, 613 F.3d 1035, 1044-45 (11th Cir. 2010). This Court does not find the circumstances of this case to present a situation of that exceptional degree. There is no doubt that Plaintiffs' counsel carried a significant expense burden over the several years that this case lasted. However the length of the litigation---and the resulting delay in the attorneys' recovery---is not so exceptional as to warrant an enhancement of the lodestar fee. Nor did counsel have to bear the expense of trial. Lastly counsel are receiving the benefit of their current hourly rates. In effect that provides them a form of compensation that accounts for the passage of time since the lawsuit's start.

Binding federal case law does not permit the use of an enhancement to reward counsel for the risk of taking on a difficult case. The objective lodestar fee standard already accounts for many factors inherent in a difficult case. The one exception is the risk of taking on a case where success seems unlikely, i.e., an unmeritorious case. That is a factor that the case law expressly excludes from the lodestar fee analysis. See in re: The Home Depot, Inc., 931 F.3d at 1083-86. In any event that particular factor is irrelevant here. This case did present a reasonably strong likelihood of prevailing. Many of the issues that this case raised were fairly clear-cut, and there

was the benefit of an already established record that ran in the Plaintiffs' favor. Thus this case did

not present such a substantial risk of losing that would justify a risk enhancement---even if it

were available in federal court.

Florida case law offers more latitude in using a multiplier to enhance a fee award. See

generally, St. Louis Condo., 2019 WL 7905013 at *6—7 (summarizing Florida law regarding

multipliers). However the Plaintiffs do not persuade this Court that Florida case law even applies

to this fee determination in the first place. Federal statutes permit fee-shifting for two of the

Plaintiffs' three causes of action. Their third cause of action is essentially one for breach of

contract for which Florida common law applies. However it is a contract that was reached to

settle a federal lawsuit, and the Plaintiffs chose to litigate its breach in federal court. In any event

it is a moot point. Even if Florida multiplier law were available in this case and if Purdue and

Home Depot did not preclude its application here, this Court still would not find the Plaintiffs

entitled to multiplier under the Florida law standard. This Court would not apply a Florida law

multiplier for the same reasons it does not enhance the lodestar fee under federal law. Instead

this Court finds the above lodestar fee assessment to provide reasonable compensation for

litigating the Plaintiffs' lawsuit to successful completion and one that accounts for all of the

various circumstances including counsel's excellent performance and the substantial recovery

obtained.

## V.       § 1920 COSTS

Rule 54(d) says that costs "should be allowed to the prevailing party." Rule 54(d) thereby

creates a strong presumption in favor of a cost award. See Arcadian Fertilizer, LP v. MPW Indus.

Serv., Inc., 249 F.3d 1293, 1296 (11th Cir. 2011). What costs are taxable is defined by statute in

terms of type, use, and reasonableness. Title 28 U.S.C. § 1920 delineates what kinds of costs the

prevailing party may recover. The Eleventh Circuit and the district courts that apply those Eleventh Circuit opinions construe § 1920 narrowly. See West v. Zacharzewski, 2019 WL 2567665 (S.D.Fla. 2019) and Patsalides v. Fort Pierce, 2017 WL 10402989, *1 (S.D.Fla. 2017) (citing case law).

The Plaintiffs submit their Bill of Costs at DE 283. They seek to tax a total of $11,815.80 for costs incurred both at the trial and appellate levels of the litigation. As the movants, the Plaintiffs bear the burden of persuasion. However the Defendant, as the responding party, also bears an obligation to object if a claimed cost is not properly taxable. Patsalides, 2017 WL 10402989 at *1. The Defendant raises no objection under federal law to any of the costs that the Plaintiffs seek to recovery under § 1920. Therefore this Court finds that the Plaintiffs shall recover the full **$11,815.80** that they claim in their Bill of Costs.

## VI.    EXPENSES

In their Omnibus Motion (DE 278) the Plaintiffs claim an additional $41,718.26 in expenses beyond what their Bill of Costs covers. The Plaintiffs support that claim through their counsel's Joint Declaration at DE 282. Invoices in support of the expenses are attached to both it and to the Bill of Costs (DE 283). From its own review of the invoices, this Court counts a total of $41,920.87 in expenses. However this Court will go by the lesser amount of $41,718.26 that the Plaintiffs actually claim.

The first issue for this Court to decide is whether the Plaintiffs demonstrate legal entitlement to recover additional expenses. Both 15 U.S.C. § 1681n(a)(1)(B)(3) of FCRA and § 559.77, Fla. Stat., of FCCPA mention only the award of "costs" for prevailing parties. Likewise ¶7 of the parties' Third Settlement Agreement (at page 4 of DE 278—2) deems the Plaintiffs to be prevailing parties "on their FCRA, FCCPA, and Contract claims" and leaves for judicial

determination "the award of reasonable attorneys' fees and <u>costs</u> under the FCRA, FCCPA and Contract". (emphasis added). Consequently neither the statutes nor the parties' Third Settlement Agreement---which settled this lawsuit---expressly permits the recovery of <u>expenses</u> not otherwise taxable under § 1920. However the contract whose breach was subject of this litigation does provide for such: ¶6 of the parties' Second Settlement Agreement (found at pages 2-3 of DE 93—3) permits an award of "reasonable attorneys fees, <u>expenses,</u> and costs" incurred from any lawsuit brought to enforce it because "of a material breach". (emphasis added). Nor does the Defendant raise any objection to the Plaintiffs' request for expenses not otherwise taxable under § 1920 on entitlement grounds. In the prior cost and expense ruling found at DE 205, this Court proceeded on the assumption that the Plaintiffs may recover both costs and expenses. For all of the above reasons this Court finds that the Plaintiffs may seek expenses here, too.

The Defendant does object to specific expenses that the Plaintiffs claim, however. First, the Defendant objects to travel-related expenses. The Defendant cites no federal case law that says whether an attorney may recover such expenses. Therefore for present purposes this Court assumes that there is no general bar against the recovery of travel-related expenses. However this Court does deny the $69.61 in meal-related expenses. Counsel would have to eat regardless of whether they are traveling or working at the office.

Second, the Defendant objects to the $905.81 charged for computerized legal research. The Defendant does not object to the Plaintiffs' ability to recovery that expense type at all but rather to Plaintiffs' limited justification of it. The Defendant considers the Plaintiffs' statements that that expense was "necessarily related to the prosecution of this action" and "essential to address the legal issues associated with [it]" as too conclusory to provide sufficient support. The Plaintiffs do not defend this expense item in their Reply. Nevertheless this Court will allow it to

stand as is. This Court assumes that the legal research was necessary to the litigation and that the amount claimed is reasonable.

Third, the Defendant objects to the $21,350 charged by the Plaintiffs' fee expert witness, Mr. Regensdorf. Mr. Regensdorf says that he spent 42.7 hours reviewing the file and preparing his report, for which he charges $500 an hour. (At page 32 of DE 298—2, this Court notes, Mr. Regensdorf claims an additional $9,150.00 for preparing his Reply Declaration, but the Plaintiffs do not request a supplemental expense award to include it.) The Defendant complains that the Plaintiffs cite no federal case law to support recovering this expense. The only federal case law that the Defendant cites against this expense is Amaro v. Specialized Loan Servicing, LLC, 2011 WL 6181918 (M.D.Fla. 2011). At issue in Amaro was the (far lesser) $1,500 fee that that prevailing party's fee expert witness was charging. The Amaro court noted how the movant cited no legal authority to support the recovery of that expense item for prevailing on a Fair Debt Collection Practices Act claim. Nor did the parties' settlement agreement expressly permit it. The Amaro court therefore declined to award it. Unlike in Amaro, the Plaintiffs can demonstrate entitlement to seek an expense award. As such this Court finds that the Plaintiffs may recover the expense of their expert witness report just as they may for their credit expert witness (to which the Defendant raises no objection).

The Defendant also challenges the reasonableness of the $21,350.00 sum claimed. Mr. Regensdorf's two reports did provide an evidentiary predicate to support the Plaintiffs' Omnibus Motion generally, but beyond that, his reports were not solely determinative of the outcome. The expert witness relied heavily on Florida case law and on broad, conclusory assertions. Little task-by-task discussion was provided. Because there was some limit to the extent to which the expert witness impacted the analysis and ultimate outcome, it would be unreasonable to allow the

Plaintiffs to recover the full amount. The Defendant's fee expert witness, Mr. Kampf, spent just 15 hours doing the same work. Consequently this Court reduces the amount of this expense by half and limits the recovery to $10,675.00 for all work that Mr. Regensdorf has done in this case.

Taken together, this Court finds that the Plaintiffs' expense request should be reduced by $10,744.61. That yields a more reasonable amount. As such, this Court awards the Plaintiffs a total of **$30,973.65** in expenses.

## VII. CONCLUSION

The Plaintiffs vindicated important rights and policy interests with this litigation. The Plaintiffs ultimately prevailed but only after a substantial effort on their part. At issue now is the amount of attorney fees that the Plaintiffs may recover for that effort. The Plaintiffs fail to persuade this Court that the lodestar fee standard permits them to recover the full amount that they are claiming. Because the fee that the Plaintiffs claim exceeds what the lodestar standard permits, this Court must reduce it for them and calculate what that lower lodestar fee should be. This Court likewise reviews the Plaintiffs' claimed expenses and costs for reasonableness. Altogether, this Court finds the governing law to permit the Plaintiffs to recover a total fee, expense, and cost award of **$648,000.20**.

It is therefore,

**ORDERED AND ADJUDGED** that the Plaintiffs' Omnibus Motion for Attorneys Fees, Costs, and Expenses (DE 278) is **GRANTED, in part**, and the Plaintiffs' Bill of Costs (DE 283) is **GRANTED**. This Court **AWARDS** the Plaintiffs a total of **$648,000.20**. It is further,

**ORDERED AND ADJUDGED** that pursuant to ¶2 of the parties' Notice of Settlement and Joint Motion for Further Orders (DE 270), the Defendant shall pay the $2,942.25 that is subject of the Appellate Judgment dated March 25, 2019 to the Kim Vaughan Lerner Trust

Account. The Defendant has one month from the date of this Order to make this particular

payment if not already done. (Although the above total cost award includes this $2,942.25

amount, this Court makes separate provision for it here pursuant to the parties' request at DE

270.)

      **DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 29th day of July,

2020.

                                        SHANIEK M. MAYNARD
                                        UNITED STATES MAGISTRATE JUDGE